UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LEON JEFFERY SLAGLE,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

Case No.  1:15-cv-1178

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Leon Slagle seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See*

*Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.43, 67.) He completed the eighth grade, and was previously employed as a welder, a computer numerically controlled (CNC) operator, and as a picker. (PageID.69, 94.) Plaintiff applied for benefits on November 2, 2012, alleging that he had been disabled since December 1, 2011, due to a major depressive psychotic antisocial personality, a severe major depressive disorder with psychotic features, cannabis abuse, amphetamine or related sympathomimetic abuse in remission, and antisocial personality disorder. (PageID.99, 169–170.) Plaintiff's application was denied on March 6, 2013, after which time he requested a hearing before an ALJ. (PageID.111–114, 118–110.) On December 6, 2013, Plaintiff appeared with his counsel

before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.60, 97.) In a written decision dated March 21, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.43–59.) On September 21, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–33.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.48.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) schizoaffective disorder; (2) cannabis abuse; (3) panic disorder; and (4) anti-social personality disorder. (PageID.48.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.48–49.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: performing simple routine tasks involving no more than simple short instructions and simple work related decisions with few work place changes, no contact with the general public and occasional contact with coworkers and supervisors

(PageID.49–50.) Continuing with step four, the ALJ also determined that Plaintiff was unable to perform any past relevant work. (PageID.54.)

At step five, the ALJ questioned the VE to determine whether a significant number of jobs exists in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the positions of sorter (agriculture), garment sorter, and folder as jobs Plaintiff could perform. (PageID.94.) The VE further testified that these jobs amounted to a total of 3,260 position in the state. (PageID.94.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*,

861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ determined that Plaintiff was not under a disability at any point from December 1, 2011 (the alleged disability onset date) through March 21, 2014 (the date of the decision). (PageID.55.)

## DISCUSSION

### 1.   The ALJ Failed to Properly Consider Dr. Geetha Dhatreechaan's Opinion.

On February 13, 2014, Ms. Wendy Ludwig, Plaintiff's mental health therapist, gave a statement to Plaintiff's attorney concerning Plaintiff's impairments. (PageID.556–558.) Ms. Ludwig stated that Plaintiff suffered from anxiety and paranoia, and that those conditions were exacerbated when he was around crowds. He also had depression, hallucinations, irritability, and paranoid thoughts. He tended to isolate himself, had poor hygiene, and lacked empathy. (PageID.556.) Ms. Ludwig opined that Plaintiff would "struggle to maintain any type of competitive employment." (PageID.557.) He would have conflicts with others, and supervisors and authority figures would appear hostile to him. (PageID.557.) She further stated that were Plaintiff to work, she would expect him to miss more than four days of work per month. On days when he was working, Ms. Ludwig believed Plaintiff's symptoms would cause him to be off task for a quarter of the workday. (PageID.557.) Finally Ms. Ludwig commented on Plaintiff's marijuana use. She noted that it was her desire that Plaintiff not use marijuana, but admitted that were he to cease his substance use, he would not experience a significant improvement in his functioning. (PageID.558.) The following day, the statement was cosigned by Plaintiff's treating psychiatrist, Dr. Geetha Dhatreechaan. (PageID.558.) Plaintiff argues the ALJ erred in failing to give the opinion controlling weight.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the

physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

> The ALJ discussed the opinion as follows:
>
> Regarding Ms. Wendy Ludwig's opinion in Exhibit 10F, there is no reason to believe the claimant is not capable of working on a competitive and consistent basis if he were to be placed in a job within the parameters of the established residual functional capacity. The office notes clearly show that the claimant has repeatedly indicated that he uses marijuana despite medical advice to cease use and follow through with prescribed levels of medications. The claimant also indicated that he stops using his medications when he drinks alcohol (Ex 1F, 2F, 6F). Since the claimant has not been compliant with prescribed treatment, Ms. Ludwig's opinion is in no way supported by the evidence. Furthermore, I note the opinion was later signed by treating psychiatrist, Dr. Dhatreechaan who agreed with Ms. Ludwig's statement. However, the office note from November 25, 2013 indicates the claimant had good eye contact. His speech was normal, not pressured. His grooming was average, which is not consistent with Ms. Ludwig's description of the claimant's hygiene issues (Ex 7F, 9F). However, it appears the observations of the claimant and his demeanor during office visits is generally consistent with the evidence that the State agency psychiatrist based much of the March 5, 2013 assessment on (Ex 1A). For this reason as well as all the evidence, I am giving greater weight to the State agency assessment.

(PageID.53.) Plaintiff raises a number of arguments regarding the above quoted discussion. The Court only partially agrees.

Several of Plaintiff's arguments are not persuasive. Plaintiff argues, for example, that the ALJ failed to mention that Dr. Dhatreechaan adopted Ms. Ludwig's opinion and furthermore failed to state what weight the statement was given. (PageID.580.) Plaintiff also argues the ALJ was required to separately discuss the opinion as if it had been presented solely from Ms. Ludwig. (PageID.582–583.) In all this, Plaintiff is mistaken.

7

As noted in the ALJ's discussion, the opinion originated as a statement by Ms. Ludgwig and it was later adopted by Dr. Dhatreechaan, Plaintiff's treating psychiatrist. The ALJ explicitly and accurately stated as much. (PageID.53.) The ALJ also explicitly stated the weight she was giving the opinion. (PageID.53.) While it may have been preferable for the ALJ to assign an independent weight to the opinion rather than assign it a weight relative to that of the agency consultant, Plaintiff has pointed to no authority demonstrating that the ALJ erred here. Similarly, Plaintiff provides no authority for the assertion the ALJ had to separately discuss the opinion as one solely from Ms. Ludwig. In any event, the ALJ's discussion of the opinion easily passes muster under the standard for considering therapists' opinions. This is so because the opinions of therapists fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d)(1). While the factors set forth in 20 C.F.R. 404.1527 "can" be applied to other source opinions, the social security regulations only require that information from other sources be "considered." SSR 06–03p, 2006 WL 2329939, at *1, 4 (S.S.A. Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see also Hill v. Comm'r of Soc. Sec.*, No. 1:12-CV-235, 2013 WL 2896889, at *2–3 (W.D. Mich. June 13, 2013). This is not a demanding standard. It was easily met here.

At bottom, however, the parties do not dispute that Dr. Dhatreechaan's adoption of Ms. Ludwig's opinion transformed the opinion into that of a treating source that the ALJ was required to treat accordingly. Both parties cite the relevant standards for considering such opinions, but disagree on whether the ALJ satisfied the requirements. Because it is clear the ALJ did not assign controlling weight to the opinion, the question becomes whether the ALJ provided good reasons for doing so. *See Gayheart,* 710 F.3d at 376. The Court is unable to find good reasons here.

The ALJ began by noting that Plaintiff was not following prescribed treatment, both by continuing to abuse marijuana despite his treaters' admonitions, and by failing to take his medication as prescribed.[2]  (PageID.53.)  Indeed, on several occasions Plaintiff reported to his examiners that he was not following their recommendations.  For example, records from July 26, 2013, demonstrate that Ms. Ludwig recommended Plaintiff cease his substance use as it could affect his mental health, but Plaintiff disagreed and believed his marijuana use made him more sociable and calmer.  (PageID.365–366.)  In October 15, 2013, Ms. Ludwig noted Plaintiff was still using marijuana and alcohol intermittently.  (PageID.350.)  Plaintiff also stated that he did not take his medication when using alcohol.  (PageID.377.)  The ALJ found that the Plaintiff's noncompliant behavior signaled that the "opinion is in no way supported by the evidence."  (PageID.53.)  Certainly a claimant's failure to follow the prescribed course of treatment may undercut the claimant's own credibility.  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir.1988).  But it is not apparent to the Court why Plaintiff's failure to follow recommended treatment should lead to an assignment of less weight to this opinion, and the ALJ did not further explain her reasoning.  If anything, Plaintiff's inability to follow treatment appears to be consistent with Ms. Ludwig and Dr. Dhatreechaan's opinion that Plaintiff would be off-task for a quarter of the workday.  An ALJ "must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of [her] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  The Court cannot do so here.

The ALJ also found the opinion to be inconsistent with a treatment note from Dr. Dhatreechaan dated November 25, 2013.  (PageID.53.)  But this record appears to demonstrate that

---

[2] The ALJ did not, as Plaintiff claims, discount the opinion because of Plaintiff's drug use. (PageID.605.)

Plaintiff was more limited than as the ALJ described it. For example, while the doctor did find Plaintiff had average grooming and good eye contact, with non pressured speech during the visit, the note also reports that Plaintiff stated he was hearing voices two to three times a week and seeing shadows daily. (PageID.546.) He was assigned a GAF score of 45 indicating that he was experiencing "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to hold a job)." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994). Thus this note does not support the ALJ's decision either. The Commissioner argues the ALJ discussed other reasons for discounting the opinion, pointing out that the ALJ also discussed, among other things, Plaintiff's relatively conservative treatment and daily activities. (PageID.54, 593–594.) But it does not appear this was discussed by the ALJ in connection with the opinion. (PageID.53–54.) In any event, the Commissioner's argument here is precisely the type of analysis the ALJ should have conducted in the first instance. For reasons stated above, the Court finds the ALJ failed to provide good reasons for assigning less than controlling weight to Dr. Dhatreechaan's opinion.

### 2.     The ALJ Properly Considered Dr. Ruquiya Tareen's Opinion.

Plaintiff next argues that the ALJ could not give greater weight to the opinion of Dr. Ruquiya Tareen, the agency consultant, than to Dr. Dhatreechaan because the Dr. Tareen did not review the entire record. (PageID.581–582.) This is not sufficient to establish error. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL

5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). However, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (internal quotations omitted). Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that Dr. Tareen gave the opinion on the basis of the medical record as it existed at the time the opinion was given. (PageID.53.) It is equally clear the ALJ examined the entire record, including those records dated after Dr. Tareen's opinion, in arriving at her determination. (PageID.46, 56–59.) The ALJ is responsible for weighing conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider the doctor's opinion and determine what weight, if any, it should be given. The Court finds no error here.

### 3. Plaintiff Raises A Perfunctory Credibility Argument.

In a short argument consisting of a single paragraph, Plaintiff appears to argue the ALJ's RFC determination is unsupported by substantial evidence because it failed to account for the limitations provided by Dr. Dhatreechaan and his own testimony. (PageID.583–584.) The Court is already remanding this case for further consideration of the psychiatrist's opinion. To the extent Plaintiff claims the ALJ erred in assessing his credibility, he presents no meaningful discussion on this topic, and has accordingly waived the issue. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

### 4. The ALJ's Step Five Determination.

Finally, Plaintiff contends that the ALJ's hypothetical question was flawed because the ALJ did not appropriately analyze Dr. Dhatreechaan's opinion. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

In this case, the ALJ's hypothetical questions were proper, because the questions included limitations that the ALJ found credible and consistent with the ALJ's RFC determination.

*See Stanley*, 39 F.3d 115 at 118; *Blacha*, 927 F.2d at 231. Nevertheless, the Court agrees with Plaintiff that if the Commissioner adopts some of Dr. Dhatreechaan's additional restrictions on remand, and also finds that these restrictions adversely affect his RFC, then it will be necessary for the Commissioner to obtain additional vocational evidence based upon the new RFC.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should reevaluate Dr. Dhatreechaan's opinion.

Dated:     September 23, 2016                  /s/ Janet T. Neff
                                               JANET T. NEFF
                                               UNITED STATES DISTRICT JUDGE